Michael Faillace [MF-8436]
Michael Faillace & Associates, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
(212) 317-1200
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
VALENTIN REYES, XAVIER ROMAN PACHECO,
DANIEL MORALES PEREZ, JUAN CARLOS
FLORES-MENDEZ, and JACQUELIN CABRERA
ROMERO,

                                *Plaintiffs,*

                          -against-

ADMIRAL SERVICES NY LLC (d/b/a LA
DIAGONAL AGAVERIA) and WILLIAM FALCON,

                            *Defendants.*
------------------------------------------------------------X

                                 **COMPLAINT**
                                 **COLLECTIVE ACTION**
                                 **UNDER 29 U.S.C. § 216(b)**
                                 **ECF Case**

      Plaintiffs Valentin Reyes, Xavier Roman Pacheco, Daniel Morales Perez, Juan Carlos

Flores-Mendez, and Jacquelin Cabrera Romero (collectively, "Plaintiffs"), by and through their

attorneys, Michael Faillace & Associates, P.C., upon information and belief, and as against each

of Defendants Admiral Services NY LLC (d/b/a La Diagonal Agaveria) and William Falcon

(collectively, "Defendants"), allege as follows:

<u>**NATURE OF ACTION**</u>

      1.      Plaintiffs were former employees of Defendants Admiral Services NY LLC (d/b/a

La Diagonal Agaveria) ("Defendant Corporation") and William Falcon.

      2.      La Diagonal Agaveria is a Mexican restaurant owned by William Falcon located

at 185 Saint Nicholas Avenue, New York, New York 10026.

3.      Upon information and belief, Defendant William Falcon serves or served as owner, manager, principal or agent of Defendant Corporation, and through this corporate entity, operates or operated the Mexican restaurant.

4.      Plaintiffs were employed as cooks, a busboy, a server, and a waitress.

5.      However, the tipped workers were required to spend a considerable part of their work day performing non-tipped duties including but not limited to, various restaurant duties such as sweeping and mopping the floors, cleaning the restrooms, windows, and the bar, directing customers to their tables, washing dishes, folding napkins, taking tables out to the patio, stocking deliveries, food running, cutting meats and vegetables, and preparing cocktails (hereinafter the "non-tipped duties").

6.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage and overtime compensation for the hours that they worked.

7.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.      Further, Defendants failed to pay Plaintiffs Morales and Flores the required "spread of hours" pay for any day in which they worked over 10 hours per day.

9.      Defendants employed and accounted for Plaintiffs Cabrera, Reyes and Roman as tipped workers in their payroll, but in actuality these Plaintiffs' duties required a significant amount of time spent performing the non-tipped duties outlined above.

10.     Regardless, Defendants usually paid these plaintiffs at the tip-credit rate.

11.     Under state law, Defendants were not entitled to take a tip credit because these Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day. 12 N.Y.C.R.R. §146.

12.     Upon information and belief, Defendants employed the policy and practice of disguising these Plaintiffs' actual duties in payroll records by designating them as tipped employees instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay Plaintiffs the lower tip-credited rate.

13.     In addition, defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' tips and made unlawful deductions from Plaintiffs' wages.

14.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

15.     At all times relevant to this complaint, Defendants maintained a policy and practice of requiring Plaintiffs to work without paying them the minimum wage and overtime compensation required by both federal and state laws and regulations.

16.     Plaintiffs now bring this action for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

17.     Plaintiffs seek certification of this action as a collective action on behalf of themselves individually and all other similarly situated employees and former employees of defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) (FLSA), 28 U.S.C. § 1531 (interstate commerce) and 28 U.S.C. § 1331 (federal question). Supplemental jurisdiction over Plaintiffs' state law claims is conferred by 28 U.S.C. § 1367(a).

19.     Venue is proper in this district under 28 U.S.C. § 391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district, Defendants operate their businesses in this district, and Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

20.     Plaintiff Valentin Reyes ("Plaintiff Reyes" or "Mr. Reyes") is an adult individual residing in Kings County, New York.  Plaintiff Reyes was employed by Defendants from approximately February 4, 2017 until on or about June 13, 2017.

21.     Plaintiff Xavier Roman Pacheco ("Plaintiff Roman" or "Mr. Roman") is an adult individual residing in New York County, New York. Plaintiff Roman was employed by Defendants from approximately December 2016 until on or about July 15, 2017.

22.     Plaintiff Daniel Morales Perez ("Plaintiff Morales" or "Mr. Morales") is an adult individual residing in Queens County, New York.  Plaintiff Morales was employed by Defendants from approximately February 20, 2017 until on or about June 13, 2017.

4

23.     Plaintiff Juan Carlos Flores-Mendez ("Plaintiff Flores" or "Mr. Flores") is an adult individual residing in New York County, New York.  Plaintiff Flores was employed by Defendants from approximately March 1, 2017 until on or about June 25, 2017.

24.     Plaintiff Jacquelin Cabrera Romero ("Plaintiff Cabrera" or "Ms. Cabrera") is an adult individual residing in Queens County, New York.  Plaintiff Cabrera was employed by Defendants from approximately April 2017 until on or about July 9, 2017.

*Defendants*

25.     At all times relevant to this complaint, Defendants owned, operated, and/or controlled a Mexican restaurant located at 185 Saint Nicholas Avenue, New York, New York 10026 under the name "La Diagonal Agaveria".

26.     Upon information and belief, La Diagonal Agaveria LLC ("Defendant Corporation"), is a corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 185 Saint Nicholas Avenue, New York, New York 10026.

27.     Defendant William Falcon is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period. Defendant William Falcon is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporation.

28.     Defendant William Falcon possesses or possessed operational control over Defendant Corporation, had an ownership interest in Defendant Corporation, and/or controlled significant functions of Defendant Corporation.

5

29.     Defendant William Falcon determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

30.     Defendants operate a Mexican restaurant located at 185 Saint Nicholas Avenue, New York, New York 10026.

31.      Individual Defendant William Falcon possesses operational control over Defendant Corporation, possesses an ownership interest in Defendant Corporation, and control significant functions of Defendant Corporation.

32.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method and share control over the employees.

33.     Each Defendant possessed substantial control over Plaintiffs' working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, referred to herein.

34.     Defendants jointly employed Plaintiffs, and are Plaintiffs' employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

35.     In the alternative, Defendants constitute a single employer of Plaintiffs.

36.     Upon information and belief, individual defendant William Falcon operates Defendant Corporation as either an alter ego of himself and/or fails to operate Defendant Corporation as a legal entity separate and apart from himself by, among other things:

(a)    failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a separate and legally distinct entity;

(b)    defectively forming or maintaining Defendant Corporation by, among other things, failing to hold annual meetings or maintaining appropriate corporate records;

(c)    transferring assets and debts freely as between all Defendants;

(d)    operating Defendant Corporation for his own benefit as the sole or majority shareholder;

(e)    operating Defendant Corporation for his own benefit and maintaining control over it as a closed corporation or closely controlled entity;

(f)    intermingling assets and debts of his own with Defendant Corporation;

(g)    diminishing and/or transferring assets of Defendant Corporation to protect his own interests; and

(h)    other actions evincing a failure to adhere to the corporate form.

37.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and NYLL.

38.    Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

39.    In each year from 2016 to 2017, Defendants, both individually and jointly, had gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

7

40.     In addition, upon information and belief, Defendants and/or their enterprises were directly engaged in interstate commerce. For example, numerous items that were sold in the Mexican restaurant on a daily basis, such as meats and vegetables, were produced outside of the State of New York.

### Individual Plaintiffs

41.     Plaintiffs are former employees of Defendants, employed as cooks, a busboy, a server, and a waitress.

### Plaintiff Valentin Reyes

42.     Plaintiff Reyes was employed by Defendants from approximately February 4, 2017 until on or about June 13, 2017.

43.     At all times relevant to this Complaint, Plaintiff Reyes was ostensibly employed by Defendants as a busboy.

44.     However, Plaintiff Reyes was also required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

45.     Although Plaintiff Reyes was ostensibly employed as a tipped worker, he spent over 20% of each day performing non-tip work throughout his employment with Defendants.

46.     Plaintiff Reyes regularly handled goods in interstate commerce, such as meats and vegetables produced outside of the State of New York.

47.      Plaintiff Reyes' work duties required neither discretion nor independent judgment.

48.     Plaintiff Reyes regularly worked in excess of 40 hours per week.

49.     From approximately February 4, 2017 until on or about April 2017, Plaintiff Reyes worked from approximately 3:00 p.m. until on or about 12:00 a.m. seven days a week (typically 63 hours per week).

50.     From approximately May 2017 until on or about June 13, 2017, Plaintiff Reyes worked from approximately 3:00 p.m. until on or about 12:00 a.m. six days a week (typically 54 hours per week).

51.     From approximately February 4, 2017 until on or about April 2016, defendants paid Plaintiff Reyes his wages by check.

52.     From approximately May 2017 until on or about June 13, 2017, defendants paid Plaintiff Reyes his wages by two checks.

53.     Specifically, one check was compensation for the first 40 hours Plaintiff Reyes worked and another check for his hours worked over 40.

54.     However, the check that compensated for Plaintiff Reyes' hours worked over 40 was a total of approximately $50 to $70.

55.     From approximately February 4, 2017 until on or about April 2017, defendants paid Plaintiff Reyes a fixed salary of $550.00 per week.

56.     From approximately May 2017 until on or about June 13, 2017, defendants paid Plaintiff Reyes a fixed salary of $615.00 per week.

57.     Throughout his entire employment with Defendants, Plaintiff Reyes' pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

58.     For example, defendants required Plaintiff Reyes to work one hour to one hour and a half past his scheduled departure time and did not compensate him for the additional time they required him to work.

59.     Defendants never granted Plaintiff Reyes any meal breaks or rest periods of any length during his work shifts.

60.     Plaintiff Reyes was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device, such as punch cards, that accurately reflected his actual hours worked.

61.     Plaintiff Reyes was never notified by Defendants that his tips would be included as an offset for wages.

62.     Defendants did not account for these tips in any daily, weekly or other accounting of Plaintiff Reyes' wages.

63.     In addition, defendants withheld a percentage of the tips Plaintiff Reyes earned performing his job as a busboy.

64.     Defendants did not provide Plaintiff Reyes with an accurate statement of wages with each payment of wages, as required by NYLL § 195(3).

65.     Defendants never provided Plaintiff Reyes with a written notice, in English and in Spanish (Plaintiff Reyes' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

66.     No notification, either in the form of posted notices or other means, was given to Plaintiff Reyes regarding overtime and wages under the FLSA and NYLL.

67.     Defendants required Plaintiff Reyes to purchase "tools of the trade" with his own

funds—including five shirts, five pairs of pants.

*Plaintiff Xavier Roman Pacheco*

68.      Plaintiff Roman was employed by Defendants from approximately December 2016 until on or about July 15, 2017.

69.      At all times relevant to this Complaint, Plaintiff Roman was ostensibly employed by Defendants as a server.

70.      However, Plaintiff Roman was also required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

71.      Although Plaintiff Roman was ostensibly employed as a tipped worker, he spent over 20% of each day performing non-tip work throughout his employment with Defendants.

72.      Plaintiff Roman regularly handled goods in interstate commerce such as meats and vegetables, produced outside of the State of New York.

73.      Plaintiff Roman's work duties required neither discretion nor independent judgment.

74.      From approximately December 2016 until on or about July 15, 2017, Plaintiff Roman worked approximately 32 hours per week for three weeks per month and approximately 40 hours per week for one week per month.

75.      From approximately December 2016 until on or about July 15, 2017, defendants paid Plaintiff Roman by check.

76.      From approximately December 2016 until on or about July 15, 2017, defendants paid Plaintiff Roman $7.50 per hour.

11

77.     Plaintiff Roman's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

78.     For example, defendants regularly required Plaintiff Roman to depart one to two hours past his scheduled departure time, and did not compensate him for the additional time they required him to work.

79.     Defendants never granted Plaintiff Roman any meal breaks or rest periods of any length during his work shifts.

80.     Defendants never provided Plaintiff Roman with a written notice, in English and in Spanish (Plaintiff Roman's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

81.     No notification, either in the form of posted notices or other means, was given to Plaintiff Roman regarding overtime and wages under the FLSA and NYLL.

82.     Defendants required Plaintiff Roman to purchase "tools of the trade" with his own funds—including three shirts, three pairs of pants, one pair of shoes, and pens.

*Plaintiff Daniel Morales Perez*

83.     Plaintiff Morales was employed by Defendants from approximately February 20, 2017 until on or about June 13, 2017.

84.     At all times relevant to this Complaint, Plaintiff Morales was employed by Defendants as a cook.

85.     Plaintiff Morales regularly handled goods in interstate commerce, such as meats and vegetables, produced outside of the State of New York.

86.    Plaintiff Morales' work duties required neither discretion nor independent judgment.

87.    Plaintiff Morales regularly worked in excess of 40 hours per week.

88.    From approximately February 27, 2017 until on or about June 30, 2017, Plaintiff Morales worked from approximately 11:00 a.m. until on or about 1:00 a.m. Mondays, Wednesdays, Thursdays, and Fridays and from approximately 7:00 a.m. until on or about 12:00 a.m. Saturdays and Sundays (typically 88 hours per week).

89.    Throughout his entire employment with Defendants, Plaintiff Morales was paid his wages by check.

90.    Throughout his entire employment, defendants paid Plaintiff Morales a fixed salary of $800 per week.

91.    Plaintiff Morales' pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

92.    For example, defendants regularly required Plaintiff Morales to arrive one hour before his scheduled start time and continue working 25 to 30 minutes past his scheduled departure time every day and did not compensate him for the additional time they required him to work.

93.    Defendants never granted Plaintiff Morales any meal breaks or rest periods of any length during his work shifts.

94.    Plaintiff Morales was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device, such as punch cards, that accurately reflected his actual hours worked.

13

95.     Defendants did not provide Plaintiff Morales with an accurate statement of wages with each payment of wages, as required by NYLL § 195(3).

96.     Defendants never provided Plaintiff Morales with a written notice, in English and in Spanish (Plaintiff Morales' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

97.     No notification, either in the form of posted notices or other means, was given to Plaintiff Morales regarding overtime and wages under the FLSA and NYLL.

98.     Defendants required Plaintiff Morales to purchase "tools of the trade" with his own funds—including four shirts and two pairs of pants.

*Plaintiff Juan Carlos Flores-Mendez*

99.     Plaintiff Flores was employed by Defendants from approximately March 2017 until on or about June 25, 2017.

100.    At all times relevant to this Complaint, defendants employed Plaintiff Flores as a cook.

101.    Plaintiff Flores regularly handled goods in interstate commerce, such as meats and vegetables, produced outside of the State of New York.

102.     Plaintiff Flores' work duties required neither discretion nor independent judgment.

103.    Plaintiff Flores regularly worked in excess of 40 hours per week.

104.    From approximately March 2017 until on or about June 2017, Plaintiff Flores worked from approximately 11:00 a.m. until on or about 11:00 p.m. six days per week (typically 72 hours per week).

14

105.     From approximately March 2017 until on or about May 2017, defendants paid Plaintiff Flores his wages by check.

106.     For the month of June 2017, defendants paid Plaintiff Flores his wages in a combination of check and cash.

107.     From approximately March 2017 until on or about May 2017, defendants paid Plaintiff Flores a fixed salary of $875 per week.

108.     For the month of June 2017, defendants paid Plaintiff Flores a fixed salary of $975 per week ($875 by check and $100 in cash).

109.     Defendants never granted Plaintiff Flores any meal breaks or rest periods of any length during his work shifts.

110.     Plaintiff Flores was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device, such as punch cards, that accurately reflected his actual hours worked.

111.     Defendants did not provide Plaintiff Flores with an accurate statement of wages with each payment of wages, as required by NYLL § 195(3).

112.     Defendants never provided Plaintiff Flores with a written notice, in English and in Spanish (Plaintiff Flores' primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

113.     No notification, either in the form of posted notices or other means, was given to Plaintiff Flores regarding overtime and wages under the FLSA and NYLL.

*Plaintiff Jacquelin Cabrera Romero*

114.    Plaintiff Cabrera was employed by Defendants from approximately April 2017 until on or about July 9, 2017.

115.    At all times relevant to this Complaint, Plaintiff Cabrera was ostensibly employed by Defendants as a waitress.

116.    However, Plaintiff Cabrera was also required to spend a significant portion of her work day performing the non-tipped, non-delivery duties described above.

117.    Although Plaintiff Cabrera was ostensibly employed as a tipped worker, she spent over 20% of each day performing non-tip work throughout her employment with Defendants.

118.    Plaintiff Cabrera regularly handled goods in interstate commerce, such as meats and vegetables, produced outside of the State of New York.

119.     Plaintiff Cabrera's work duties required neither discretion nor independent judgment.

120.    From approximately April 2017 until on or about July 9, 2017, Plaintiff Cabrera worked from approximately 4:00 p.m. until on or about 10:00 p.m. Mondays and Tuesdays, from approximately 4:00 p.m. until on or about 12:00 a.m. Thursdays and Saturdays, and from approximately 11:00 a.m. until on or about 11:00 p.m. Sundays (typically 40 hours per week).

121.    Defendants paid Plaintiff Cabrera her wages by check.

122.    Throughout her entire employment, defendants paid Plaintiff Cabrera $7.50 per hour.

123.    Plaintiff Cabrera's pay did not vary even when she was required to stay later or work a longer day than her usual schedule.

16

124.    For example, defendants regularly required Plaintiff Cabrera to clock out and work two hours past her scheduled departure time on Thursdays, and did not compensate her for the additional time they required her to work.

125.    Defendants never granted Plaintiff Cabrera any meal breaks or rest periods of any length during her work shifts.

126.    Plaintiff Cabrera was never notified by Defendants that her tips would be included as an offset for wages.

127.    Defendants did not account for these tips in any daily, weekly or other accounting of Plaintiff Cabrera's wages.

128.    In addition, defendants withheld a percentage of the tips Plaintiff Cabrera earned performing her job as a waitress.

129.    Defendants did not provide Plaintiff Cabrera with an accurate statement of wages with each payment of wages, as required by NYLL § 195(3).

130.    Defendants never provided Plaintiff Cabrera with a written notice, in English and in Spanish (Plaintiff Cabrera's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL § 195(1).

131.    No notification, either in the form of posted notices or other means, was given to Plaintiff Cabrera regarding overtime and wages under the FLSA and NYLL.

132.    Defendants required Plaintiff Cabrera to purchase "tools of the trade" with her own funds—including uniform.

### Defendants' General Employment Practices

133.    Defendants regularly required Plaintiffs, to work in excess of forty (40) hours per

17

week without paying them the proper minimum wage, overtime compensation and spread of hours pay.

134.    All Plaintiffs were victims of Defendants' common policy and practices which violated their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

135.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, resulting in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

136.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

137.    Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

138.    Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

139.    Defendants failed to maintain a record of tips earned by Plaintiffs who worked as tipped workers for the tips they received.

140.    Furthermore, as part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving tipped workers of a portion of the tips earned during the course of employment.

141.    Defendants unlawfully misappropriated charges purported to be gratuities received by tipped workers, and other similarly situated employees, in violation of New York Labor Law § 196-d (2007).

142.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

143.    Defendants required Plaintiffs who were tipped workers to perform general, non-tipped restaurant tasks in addition to their primary duties as tipped workers.

144.    Plaintiffs were employed ostensibly as tipped employees by Defendants, although their actual duties included greater or equal time spent performing non-tipped duties.

145.    These Plaintiffs were paid at the lower tip-credit rate required by NYLL.

146.    In addition, under state law, Defendants were not entitled to a tip credit because these Plaintiffs' non-tipped duties exceeded 20% of each workday. 12 N.Y. C.R.R. § 146.

147.    New York State regulations provide that an employee cannot be classified as a tipped employee "on any day… in which he has been assigned to work in an occupation in which tips are not customarily received."  (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

148.    These Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties including the non-tipped duties described above.

149.    In violation of federal and state law, as discussed above, Defendants classified

these Plaintiffs as tipped employees and paid them at the tip-credited rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

150.    Plaintiffs were paid their wages by company checks or a combination of check and cash.

151.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

152.    Defendants failed to post required wage and hour posters in the Mexican restaurant, and did not provide Plaintiffs with statutorily required wage and hour records or statements of their pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of Plaintiffs' relative lack of sophistication in wage and hour laws.

153.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

154.    Defendants employed some Plaintiffs as tipped workers and required them to provide their own tools for the job, and refused to compensate them or reimburse them for these expenses.

155.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

156.   Defendants' unlawful conduct was intentional, willful, in bad faith, and has caused significant damages to Plaintiffs and other similarly situated current and former workers.

157.   Defendants failed to provide Plaintiffs with wage statements at the time of payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

158.   Defendants failed to provide Plaintiffs, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language of Spanish, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law § 195(1).

### FLSA COLLECTIVE ACTION CLAIMS

159.   Plaintiffs bring their FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class"), *i.e.*, persons who are or were employed by

Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

160.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have had substantially similar job requirements and pay provisions.

161.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them minimum wage, overtime at a one and one-half times their regular rates for work in excess of forty (40) hours per workweek and willfully failing to keep records required by the FLSA.

162.    The claims of Plaintiffs stated herein are similar to those of the other similarly situated employees.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FLSA MINIMUM WAGE PROVISIONS

163.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

164.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

165.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

166.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

22

167.    Defendants failed to pay Plaintiffs and the FLSA class members at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

168.    Defendants' failure to pay Plaintiffs and the FLSA class members at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

169.    Plaintiffs and the FLSA class members were damaged in an amount to be determined at trial.

<u>SECOND CAUSE OF ACTION</u>
**VIOLATION OF THE FLSA OVERTIME PROVISIONS**

170.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

171.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act.  29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

172.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

173.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act.  29 U.S.C. § 203 (r-s).

174.    Defendants, in violation of 29 U.S.C. § 207 (a)(1) of the FLSA, failed to pay Plaintiffs and the FLSA class members overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

175.    Defendants' failure to pay Plaintiffs and the FLSA class members overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

176.    Plaintiffs and the FLSA class members were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
## VIOLATION OF THE NEW YORK MINIMUM WAGE LAW

177.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

178.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled terms and conditions of employment, and determined the rates and methods of any compensation in exchange for employment.

179.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

180.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

181.    Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
## VIOLATION OF THE OVERTIME PROVISIONS OF THE
## NEW YORK STATE LABOR LAW

182.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

183.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq.* and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs  overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

184.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

185.    Plaintiffs were damaged in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**(VIOLATION OF THE SPREAD OF HOURS WAGE ORDER**
**OF THE NEW YORK COMMISSIONER OF LABOR)**

186.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

187.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq.* and 12 N.Y.C.R.R. §§ 146-1.6.

188.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

189.    Plaintiffs were damaged in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF THE NOTICE AND RECORDKEEPING**
**REQUIREMENTS OF THE NEW YORK LABOR LAW**

190.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

191.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), of their rate of pay, regular pay day, and such other information as required by NYLL §195(1).

192.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

**SEVENTH CAUSE OF ACTION**

**VIOLATION OF THE WAGE STATEMENT PROVISIONS**
**OF THE NEW YORK LABOR LAW**

193.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

194.    Defendants did not provide Plaintiffs with a statement of wages with each payment of wages, as required by NYLL § 195(3).

195.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

**EIGHTH CAUSE OF ACTION**
**(RECOVERY OF EQUIPMENT COSTS)**

196.    Plaintiffs repeat and re-allege all paragraphs above as though set forth fully herein.

197.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their job, such as shoes and clothing, further reducing their wages in violation of the FLSA and NYLL. 29 U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

198.    Plaintiffs were damaged in an amount to be determined at trial.

**NINTH CAUSE OF ACTION**
**(VIOLATION OF THE TIP WITHHOLDING PROVISIONS**
**OF THE NEW YORK LABOR LAW)**

199.    Plaintiffs repeat and re-allege all paragraphs above as though set forth fully herein.

200.    Defendants unlawfully and without permission from Plaintiffs misappropriated and withheld gratuities paid by customers which should have been retained by Plaintiffs.

201.    Defendants' action violated NYLL §196-d.

202.    Defendants are liable to Plaintiffs in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA class members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA class members;

(d)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violation of the provisions of the FLSA were willful as to Plaintiffs and the FLSA class members;

(f)    Awarding Plaintiffs  and the FLSA class members damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA, as applicable;

(g)    Awarding Plaintiffs and the FLSA class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages,

and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations;

(k)     Declaring that Defendants violated the recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages; and any deductions or credits taken against wages;

(l)     Declaring that Defendants' violations of the New York Labor Law were willful as to Plaintiffs;

(m)     Awarding Plaintiffs damages for the amount of unpaid minimum and overtime wages, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL, as applicable;

(n)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of hours pay, overtime compensation and damages for any improper deductions or credits taken against wages shown to be owed pursuant to NYLL § 663 as applicable;

(o)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)      Declaring that Defendants' violations of NYLL § 191 were willful as to Plaintiffs;

(q)      Awarding Plaintiffs damages for Defendants' failure to pay Plaintiffs in a timely

fashion, as required by NYLL § 191;

(r)      Awarding Plaintiffs pre-judgment and post-judgment interest as applicable;

(s)       Awarding Plaintiffs the expenses incurred in this action, including costs and

attorneys' fees;

(t)      Providing that if any amounts remain unpaid upon the expiration of ninety days

following issuance of judgment, or ninety days after expiration of the time to appeal and no

appeal is then pending, whichever is later, the total amount of judgment shall automatically

increase by fifteen percent, as required by NYLL § 198(4); and

(u)      All such other and further relief as the Court deems just and proper.


JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.


Dated: New York, New York
       August 4, 2017

MICHAEL FAILLACE & ASSOCIATES, P.C.


            /s/ Michael Faillace
By:     Michael A. Faillace [MF-8436]
        60 East 42nd Street, Suite 4510
        New York, New York 10165
        (212) 317-1200
        *Attorneys for Plaintiff*

29

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 17, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name/ Nombre:                          Valentin Reyes

Legal Representative/ Representante     Michael Faillace & Associates, P.C.
Legal:

Signature/ Firma:                      Valentin Reyes

Date/ Fecha:                           July 17, 2017

*Certified as a minority-owned business in the State of New York*

# MICHAEL FAILLACE & ASSOCIATES, P.C.
### Employment and Litigation Attorneys

One Grand Central Place
60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620
Email: Faillace@employmentcompliance.com

July 17, 2017

BY HAND

To: Clerk of Court,

      I hereby consent to join this lawsuit as a party plaintiff. (Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes).

Name / Nombre:                  Xavier Roman Pacheco

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:              July 17, 2017

*Certified as a minority-owned business in the State of New York.*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 20, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name/ Nombre:                    Daniel Morales Perez

Legal Representative/ Representante    Michael Faillace & Associates, P.C.
Legal:

Signature/ Firma:

Date/ Fecha:                    July 20, 2017

*Certified as a minority-owned business in the State of New York*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

### Employment and Litigation Attorneys

One Grand Central Place
60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620
Email: Faillace@employmentcompliance.com

July 20, 2017

BY HAND

To: Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. (Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes).

Name / Nombre:                     Juan Carlos Flores-Mendez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:                 _Juan Carlos FM_

Date / Fecha:                      July 20, 2017

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

One Grand Central Place
60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620
Email: Faillace@employmentcompliance.com

July 18, 2017

BY HAND

To: Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. (Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes).

Name / Nombre:                     Jacquelin Cabrera Romero

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      July 18, 2017