

KAUFMAN DOLOWICH VOLUCK
ATTORNEYS AT LAW

*Matthew R. Capobianco, Esq.*
*MCapobianco@kdvlaw.com*

Kaufman Dolowich & Voluck, LLP

135 Crossways Park Drive, Suite 201
Woodbury, New York 11797

Telephone: 516.681.1100
Facsimile: 516.681.1101

www.kdvlaw.com

February 16, 2018

**VIA ELECTRONIC FILING**
Honorable Andrew L. Carter
United States District Court
Southern District of New York
40 Foley Square, Rm. 705
New York, NY 10007

> Re:  *Valentin Reyes et al. v. Admiral Services NY LLC*, et al.
>      Docket No. 17-cv-05918 (ALC)

Dear Judge Carter:

This office represents the Defendants in the above referenced matter. This letter motion is submitted jointly with Plaintiffs to respectfully request that Your Honor approve the within Settlement and Release Agreement (the "Agreement") between the parties, annexed hereto as Exhibit A. The Agreement represents a good faith effort between experienced counsel to negotiate a complex action under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), resulting in a settlement which provides Plaintiffs with a full and complete recovery of their damages, including liquidated damages, under applicable law. Accordingly, the parties respectfully request that Your Honor approve the Agreement as submitted.

**I.    Plaintiffs' Allegations and Defendants' Responses**

Plaintiffs are former kitchen and wait staff employees of Admiral Services NY LLC d/b/a La Diagonal Agaveria ("La Diagonal"), a Mexican restaurant located in Harlem, New York. On December 30, 2016, La Diagonal officially opened for business. La Diagonal operates seven (7) days a week, remaining closed during the major holidays. La Diagonal's regular hours of operation are as follows: Monday through Friday, 4:00PM – 11:00PM, and Saturday and Sunday, 11:00AM – 11:00PM.  Generally speaking, La Diagonal employs approximately twelve (12) – fifteen (15) employees at all times. However, on a typical day, only ten (10) employees are scheduled to work, including management. Because La Diagonal has been open for less than one year, the composition of the staff has largely remained unchanged.

On August 4, 2017, Plaintiffs filed a collective action complaint ("Complaint") against Defendants alleging various causes of action, including: (1) FLSA minimum wage violations; (2) FLSA overtime violations; (3) NYLL minimum wage violations; (4) NYLL overtime violations; (5) NYLL spread of hours violations; (6) NYLL notice and recordkeeping violations; (7) NYLL recoupment of equipment costs; and (8) NYLL tip withholding violations. Thereafter, on October 6, 2017, Defendants filed their Answer along with various affirmative defenses refuting the allegations raised in Plaintiffs' Complaint.

Hon. Andrew L. Carter
February 16, 2018
Page 2 of 6

Plaintiffs allege, *inter alia*, that they were not properly compensated for all hours worked in a given workweek. More specifically, some Plaintiffs contend that they worked, on average, sixty (60) – eighty (80) hours per week, every week, and were only paid their "straight-rate" or a weekly pay for all hours worked. The tip eligible Plaintiffs further contend that they were not provided with a notice of tip credit at the time of hire, and that they routinely performed non-tipped duties, which often exceeded 20% or 2 hours each work day. Plaintiffs further allege that they were not provided with a proper NYLL 195(1) form at the time of hire, or an accurate wage statement, each week, throughout their employment. Lastly, the tipped eligible Plaintiffs contend, without offering any factual support, that they were denied tips, and were required to purchase necessary equipment ("tools of the trade") for the job, and thus mandating reimbursement on those alleged expenses.

Defendants deny Plaintiffs' contentions in their entirety. At the outset, Defendants maintain that Plaintiffs were paid properly pursuant to the FLSA and NYLL. More specifically, Defendants dispute: (1) the number of hours worked per week by each Plaintiff; (2) that Plaintiffs were required to work "off-the-clock;" (3) the alleged employment periods for each Plaintiff; (4) that Plaintiffs were not provided with the statutorily required NYLL 195(1) forms and weekly wage statement forms; (5) that the tipped Plaintiffs performed more than 20% or 2 hours of non-tipped work each work day; and (6) that Defendants failed to give the tip eligible Plaintiffs notice of the tip credit at the time of hire. Defendants also deny all allegations concerning tip withholding and tools of the trade reimbursement.

In sum, there is a bona fide dispute between the parties regarding Plaintiffs' wage and hour claims. The instant settlement constitutes the parties' effort to resolve same in an amicable fashion through arm's length bargaining.

## II.    <u>Settlement Negotiations</u>

On September 9, 2017, Plaintiffs forwarded Defendants their damages calculations, which totaled $166,446.12. This figure represents actual and full liquidated damages for all five (5) Plaintiffs. Notably, this figure failed to acknowledge the actual amount of hours worked by Plaintiffs as detailed in Defendants' payroll records. Plaintiffs' demand also assumed that each Plaintiff was entitled to the maximum NYLL 195 wage notice and wage statement penalties. It also assumed that Defendants forfeited the applicable tip credit for all tip eligible employees for all hours worked during the relevant time period. Lastly, it assumed that the salary employees were improperly classified as exempt, and thus entitled to overtime compensation for all hours worked over forty (40) in a workweek. In short, Plaintiffs provided an initial demand which would represent their absolute maximum recovery if they were able to establish each and every aspect of their claims.

On September 27, 2017, Plaintiffs' counsel conveyed an initial settlement demand in the amount of $150,000, inclusive of attorneys' fees and costs. Initially, it should be noted that this figure was calculated using Plaintiffs' recollection and limited pay roll data. Moreover, at the time of their initial settlement demand, Defendants had not yet provided Plaintiffs with relevant payroll documentation, which Defendants utilized at mediation to drastically undercut Plaintiffs'

Hon. Andrew L. Carter
February 16, 2018
Page 3 of 6

claims. Again, it was, and remains, Defendants' position that these records serve to refute the vast majority of Plaintiffs' claims, and would serve as strong evidence that Plaintiffs were properly paid for all hours worked.

On November 28, 2017, the parties attended mediation with Fred Molod, Esq. ("Mr. Molod"), the Court appointed mediator. The mediation was civil, yet impassioned, and provided the parties with an opportunity to voice their concerns and arguments for and against liability, the various claims in the litigation, and possible defenses to same. At the commencement of mediation, Defendants conveyed a counter-offer in the amount of $20,000, inclusive of attorneys' fees and costs. Thereafter, Plaintiffs conveyed a reduced settlement demand in the amount of $125,000, inclusive of attorneys' fees and costs. In response, Defendants countered with $28,500, inclusive of attorneys' fees and costs.

Finally, after an extensive mediation, the parties were able to arrive at a mutually agreeable settlement in the amount of $65,000, inclusive of attorneys' fees and costs. Under the terms of the settlement, Plaintiffs received a total of $43,550, which included both actual and liquidated damages. The settlement also provided for attorney's fees and costs in the amount of $21,450. The settlement was then reduced to the Agreement presently before Your Honor for approval.

## III.    The Settlement is Fair and Reasonable

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, No. 11–0529–WS–B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

It is apparent that the Agreement in this matter is a fair and reasonable resolution of the bona fide disputes between the parties. This is because the Agreement: (1) fairly accounts for Plaintiffs' and Defendants' possible recovery; (2) enables the parties to avoid the possible substantial burdens and expenses of establishing their respective claims and defenses and accounts for the risks in proceeding with the litigation; and (3) is the product of arm's-length bargaining between experienced counsel which was completely devoid of any semblance of

Hon. Andrew L. Carter
February 16, 2018
Page 4 of 6

fraud or collusion. *See gen. Wolinsky*, 900 F. Supp. 2d at 335. Accordingly, it is respectfully requested that the Agreement be approved in its entirety.

1.    *The Agreement Fairly Accounts for Plaintiffs' Possible Recovery*

As noted in Point II, *supra*, Plaintiffs' maximum possible recovery in this matter was $166,446.12. However, Defendants always maintained that this was a grossly inflated figure that could not be established at trial. Indeed, to recover this amount, Plaintiffs would have been forced to establish that: (a) they were entitled to overtime, but were not properly paid; (b) they worked between sixty (60) – eighty (80) hours per week, every week, for the entire relevant time period; (c) Defendants were not eligible to claim a tip credit for the tip eligible Plaintiffs; (d) Plaintiffs were entitled to interest and "tools of the trade" reimbursements; and (e) Plaintiffs were entitled to the maximum wage notice and wage statement penalties.

Defendants were confident that they could refute these assumptions, particularly in light of the fact that the records showed that Plaintiffs worked significantly less hours than they claimed in their Complaint. Also, Plaintiffs would not have succeeded in establishing that Defendants failed to furnish them with a NYLL 195(1) wage notice form at the time of hire (as well as all relevant times thereafter), and a wage statement with every payment of wages for the entire relevant time period. While Defendants remain confident that Plaintiffs would have been unable to establish the vast majority of their claims, and that several Plaintiffs would have recovered very little, if anything, there was also readily ascertainable exposure. It is therefore Defendants' position that the settlement amount represents the maximum amount that Plaintiffs would receive at trial.

Finally, it cannot be said that the Agreement constitutes "a mere waiver of statutory rights brought about by an employer's overreaching." Accordingly, it is clear that the Agreement fairly accounts for Plaintiff's possible recovery, and constitutes a more than reasonable compromise of the bona fide dispute between the parties.

2.    *The Risk and Expenses Faced by the Parties*

The parties in this matter faced substantial risks in proceeding forward in this litigation. Plaintiffs' claims were largely based on their own recollection and belief rather than available documentation. Notably, given that Defendants maintained substantial payroll documentation, this burden likely would have been challenging for Plaintiffs. Additionally, even if Plaintiffs were able to establish some semblance of overtime, minimum wage, NYLL 195, or tip/gratuity violations, they faced the very real possibility of receiving much less at trial. Accordingly, Plaintiffs were not guaranteed a recovery in the amount that they received under the settlement had they proceeded forward, and may have ultimately received only diminutive compensation for their periods of employment.

Aside from the risks of a collective action, Defendants also recognized that the nature of the claims in this action likely would have made summary judgment nearly impossible. Specifically, as Plaintiffs' claims largely centered on an alleged failure to track certain hours or

Hon. Andrew L. Carter
February 16, 2018
Page 5 of 6

compensation, it is likely that the Court would have found that there was a genuine issue of material fact with respect to a majority of Plaintiffs' claims. While Defendants believe they would have prevailed at trial, the risk far outweighed the reward, and compelled Defendants to settle on terms which were more than favorable to Plaintiffs.

3.    *The Settlement was the Product of Arm's-Length Bargaining Devoid of Fraud or Collusion*

Finally, it cannot be disputed that the settlement was the product of legitimate bargaining between experienced counsel which was devoid of any semblance of fraud or collusion. Both Plaintiffs' and Defendants' counsel have substantial experience in wage and hour actions such as this, and were well situated to provide competent advice to their clients in how to proceed in this matter. Moreover, the integrity of the bargaining process cannot be disputed given the presence of an experienced mediator in Mr. Molod. In short, the settlement in this matter was fairly negotiated by experienced employment counsel in the presence of a prominent mediator, and should therefore be approved by the Court.

## IV.    **Plaintiffs' Application for Attorney's Fees Should Be Approved**

Under the settlement, and in accordance with their retainer agreement with Plaintiffs, Plaintiffs' counsel will receive $21,450 from the settlement fund as attorneys' fees and costs. This represents one third of the recovery in this litigation, as well as a reduction in fees from what is identified in Plaintiffs' retainer agreements, which provide that forty percent of their recovery will be retained by the firm.

The amount provided to Plaintiffs' counsel under the settlement is fair and reasonable and well within the range of fees typically awarded in cases in this Circuit. *See Castaneda v. My Belly's Playlist LLC,* No. 15 Civ. 1324 (JCF) (S.D.N.Y. Aug. 17, 2015) (Francis, M.J.) (awarding the plaintiffs' attorneys a contingency fee of one-third to account for risks in litigation); *see also Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."). In light of the nature of the issues herein, and the extensive negotiations necessary to reach the agreed-upon settlement, Plaintiffs' counsel's requested award is reasonable. *See Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. at 60; *see also McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).    Additionally, everyone covered by this settlement has agreed to the fee provided for in the settlement.

Given Plaintiffs' counsel's significant experience representing plaintiffs in New York City in wage and hour litigation, Plaintiffs' counsel was able to obtain an excellent result with relatively low time and expense. A brief biography of each attorney who performed billed work in this matter is as follows:

a.  Michael Faillace is the Managing Member of Michael Faillace & Associates, P.C, and has been in practice since 1983. From 1983 to 2000, he was in-house Employment Counsel with International Business Machines

Hon. Andrew L. Carter
February 16, 2018
Page 6 of 6

Corporation (IBM).  Mr. Faillace taught employment discrimination as an Adjunct Professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and is a nationally-renowned speaker and writer on employment law.  He also is the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace, published by Practicing Law Institute (PLI), and other employment law publications and presentations.

b.  Jesse Barton is an associate at Michael Faillace & Associates, P.C.  He graduated from Fordham Law School in 2012.  Following law school, he practiced as an associate with the law firm of Virginia & Ambinder, LLP, cultivating a background in labor and employment law, with a focus on ERISA litigation.  He joined the firm of Michael Faillace & Associates, P.C in January 2015, and was named a Rising Star by the Super Lawyers organization in 2016 and 2017.

Should Your Honor have any questions or concerns regarding this settlement, the parties are happy to address them. The parties thank the Court for its attention to this matter.

## V.    **Conclusion**

For the foregoing reasons, it is respectfully requested that the Court approve the parties' Agreement.

Respectfully submitted,
Kaufman Dolowich & Voluck, LLP

Matthew R. Capobianco

cc:    Jesse Barton, Esq. (*via* ECF)

Encl.

4823-4268-9626, v. 1

## SETTLEMENT AND RELEASE AGREEMENT

**WHEREAS**, Valentin Reyes ("Reyes"), Xavier Roman Pacheco ("Pacheco"), Daniel Morales Perez ("Perez"), Juan Carlos Flores-Mendez ("Mendez"), and Jacquelin Cabrera ("Cabrera") (collectively "Plaintiffs" and each individually a "Plaintiff") have each alleged that they have been the subject of unlawful employment practices, including overtime, minimum wage, and tip violations, by their alleged employers, Admiral Services NY LLC, and Willman Falcon (incorrectly identified in the Complaint as William Falcon) (collectively, "Defendants");

**WHEREAS**, Plaintiffs commenced an action against Defendants on August 4, 2017, in the United States District Court for the Southern District of New York (the "Court"), bearing civil action no.: 17-cv-05918 (ALC) (the "Action");

**WHEREAS**, Defendants filed an Answer to the Complaint on October 6, 2017;

**WHEREAS**, on November 28, 2017, Plaintiffs and Defendants (hereafter collectively referred to as the "Parties") attended a Court mandated mediation with Fred Molod, Esq., where a settlement in principle was reached.

**WHEREAS**, Defendants deny Plaintiffs' allegations and contend that Plaintiffs' allegations are unfounded and lack merit;

**WHEREAS**, the Parties desire to fully resolve and forever settle all of the claims asserted by the Plaintiffs against the Defendants in the Action, for the purpose of avoiding the time, expense and inconvenience of further litigation (the "Agreement");

**WHEREAS**, Plaintiffs' counsel of record in the Action and Defendants' counsel of record in the Action have negotiated extensively in good faith to reach a settlement acceptable to the Parties, which ultimately resulted in an agreement in principle at mediation between the Parties to settle the Action;

1

**WHEREAS**, this Agreement constitutes a reasonable compromise of Plaintiffs' claims and Defendants' defenses and of the bona fide dispute between the Parties;

**NOW, THEREFORE**, in consideration of the mutual promises and covenants set forth herein, the receipt and sufficiency of which is hereby acknowledged, and incorporating the above "Whereas" clauses in this Agreement, the Parties agree as follows:

1.        In consideration of the payment to Plaintiffs by Defendants of the gross sum of Sixty Five Thousand Dollars and Zero Cents ($65,000.00) (the "Settlement Amount"), Plaintiffs, on behalf of themselves and their dependents, heirs, executors, administrators, legal and/or personal representatives, successors, assigns and agents, do hereby knowingly, voluntarily, unconditionally and irrevocably release and forever discharge Defendants, and each and every one of their respective divisions, affiliates, subsidiaries, parents, corporations under common ownership or control, related business entities, predecessors, successors, management companies, assigns, officers, directors, trustees, employees, agents, shareholders, administrators, representatives, attorneys, insurers, re-insurers or fiduciaries, past, present or future (hereinafter referred to collectively as the "Releasees"), from any and all claims arising under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.*, as amended, and related regulations, and the New York Labor Law and related regulations promulgated by the NYS Commissioner of Labor, including but not limited to all claims asserted by the Plaintiffs in the Action, and any other statutory, regulatory and/or common law claims for alleged unpaid wages, unpaid minimum wages, unpaid overtime compensation, spread-of-hours compensation, unpaid benefits time, liquidated damages, statutory damages and/or penalties, interest, costs and attorneys' fees under any federal, state or local laws, based upon any conduct occurring from the beginning of the world to the date of the Plaintiffs' execution of this Agreement.  To the

fullest extent permitted by law, the Plaintiffs promise not to sue or bring any charges, complaints or lawsuits related to the claims hereby released against the Releasees in the future, individually or as members of a class. The Plaintiffs also specifically waive and release their rights to recover any money whatsoever from any of the Releasees in connection with any charge, claim or complaint filed by anyone with any government agency investigating any alleged violations relating to any of the released claims, to the fullest extent permitted by law. This waiver, release and promise not to sue is binding on the Plaintiffs, their heirs, legal representatives and assigns. In the event that any of the Plaintiffs violate this Agreement by bringing or maintaining any charges, claims or lawsuits against any of the Releasees contrary to this Paragraph, such Plaintiff(s) shall pay all costs and expenses of any of the Releasees in defending against such charges, claims or actions, including reasonable attorney's fees. The Plaintiffs specifically waive and release any right to become members of any class or collective action in any proceeding or case in which a claim or claims against the Releasees for alleged violations of the Fair Labor Standards Act and/or the New York Labor Law may arise, in whole or in part, from any event which occurred prior to Plaintiffs' execution of this Agreement. It is understood that if any of the Plaintiffs, by no action of their own, become members of any such class or collective, that such Plaintiffs shall take all steps necessary to opt out of any such class or collective action.

2.      The Settlement Amount shall be paid as follows:

(a)      Defendants shall file with the Court the Stipulation of Dismissal with Prejudice ("Stipulation"), annexed hereto as Exhibit A, together with a copy of this Agreement and the FLSA Fairness Letter Motion, within seven (7) days after the following conditions are met:

    i. Defendants receive the executed and notarized copy of this Agreement signed by each of the Plaintiffs;

    ii. Defendants receive a completed IRS Form W-4 from each of the Plaintiffs;

    iii. Defendants receive a completed IRS Form W-9 from Michael Faillace & Associates, P.C.;

(b) Within ten (10) days after notice of judicial approval, all settlement money held in Defendants' counsel's firm escrow account will be released to Plaintiffs' counsel. If any installment is due after judicial approval, the settlement checks will be sent to Plaintiffs' counsel in accordance with the terms of this Agreement, without first being held in Defendants' counsel's firm escrow account.

(c) On January 15, 2018, regardless if the Court has yet "So Ordered" the Stipulation, Defendants shall make the first installment of the Settlement Amount, broken down in 11 separate checks as described below, to Defendants' counsel's firm escrow account to be held until the Court approves the terms of this Agreement and "So Orders" the Stipulation by issuing:

    i. One (1) check payable to "Valentin Reyes" in the gross amount of $800, less all applicable tax withholdings and deductions, representing payment for Plaintiff Reyes' alleged unpaid wages;

    ii. One (1) check payable to "Valentin Reyes" in the total amount of $800, representing payment for Plaintiff Reyes' claims for liquidated damages;

iii. One (1) check payable to "Xavier Roman Pacheco" in the gross amount of $550, less all applicable tax withholdings and deductions, representing payment for Plaintiff Pacheco's alleged unpaid wages;

iv. One (1) check payable to "Xavier Roman Pacheco" in the total amount of $550, representing payment for Plaintiff Pacheco's claims for liquidated damages;

v. One (1) check payable to "Daniel Morales Perez" in the gross amount of $1,800, less all applicable tax withholdings and deductions, representing payment for Plaintiff Perez's alleged unpaid wages;

vi. One (1) check payable to "Daniel Morales Perez" in the total amount of $1,800, representing payment for Plaintiff Perez's claims for liquidated damages;

vii. One (1) check payable to "Juan Carlos Flores-Mendez" in the gross amount of $1,400, less all applicable tax withholdings and deductions, representing payment for Plaintiff Mendez's alleged unpaid wages;

viii. One (1) check payable to "Juan Carlos Flores-Mendez" in the total amount of $1,400, representing payment for Plaintiff Mendez's claims for liquidated damages;

ix. One (1) check payable to "Jacquelin Cabrera" in the gross amount of $450, less all applicable tax withholdings and deductions, representing payment for Plaintiff Cabrera's alleged unpaid wages;

    x. One (1) check payable to "Jacquelin Cabrera" in the total amount of $450, representing payment for Plaintiff Cabrera's claims for liquidated damages;

    xi. One (1) check payable to "Michael Faillace & Associates, P.C." in the total amount of $5,000, representing payment for Plaintiffs' attorneys' fees and costs;

(d)    Within thirty (30) days after payment of the first installment of the Settlement Amount, Defendants shall make the second installment of the Settlement Amount, broken down in 11 separate checks as described below, either to Defendants' counsel's firm escrow account, or to Plaintiffs, depending on whether the Court has "So Ordered" the Stipulation, by issuing:

    i. One (1) check payable to "Valentin Reyes" in the gross amount of $266.67, less all applicable tax withholdings and deductions, representing payment for Plaintiff Reyes' alleged unpaid wages;

    ii. One (1) check payable to "Valentin Reyes" in the total amount of $266.66, representing payment for Plaintiff Reyes' claims for liquidated damages;

    iii. One (1) check payable to "Xavier Roman Pacheco" in the gross amount of $183.34, less all applicable tax withholdings and deductions, representing payment for Plaintiff Pacheco's alleged unpaid wages;

iv.  One (1) check payable to "Xavier Roman Pacheco" in the total amount of $183.33, representing payment for Plaintiff Pacheco's claims for liquidated damages;

v.  One (1) check payable to "Daniel Morales Perez" in the gross amount of $600, less all applicable tax withholdings and deductions, representing payment for Plaintiff Perez's alleged unpaid wages;

vi.  One (1) check payable to "Daniel Morales Perez" in the total amount of $600, representing payment for Plaintiff Perez's claims for liquidated damages;

vii.  One (1) check payable to "Juan Carlos Flores-Mendez" in the gross amount of $466.67, less all applicable tax withholdings and deductions, representing payment for Plaintiff Mendez's alleged unpaid wages;

viii.  One (1) check payable to "Juan Carlos Flores-Mendez" in the total amount of $466.66, representing payment for Plaintiff Mendez's claims for liquidated damages;

ix.  One (1) check payable to "Jacquelin Cabrera" in the gross amount of $150, less all applicable tax withholdings and deductions, representing payment for Plaintiff Cabrera's alleged unpaid wages;

x.  One (1) check payable to "Jacquelin Cabrera" in the total amount of $150, representing payment for Plaintiff Cabrera's claims for liquidated damages;

       xi.  One (1) check payable to "Michael Faillace & Associates, P.C." in the total amount of $1,666.67, representing payment for Plaintiffs' attorneys' fees and costs;

(e)    Within thirty (30) days after payment of the second installment of the Settlement Amount, Defendants shall make the third installment of the Settlement Amount, broken down in 11 separate checks as described below, either to Defendants' counsel's firm escrow account, or to Plaintiffs, depending on whether the Court has "So Ordered" the Stipulation, by issuing:

       i.  One (1) check payable to "Valentin Reyes" in the gross amount of $266.67, less all applicable tax withholdings and deductions, representing payment for Plaintiff Reyes' alleged unpaid wages;

       ii.  One (1) check payable to "Valentin Reyes" in the total amount of $266.66, representing payment for Plaintiff Reyes' claims for liquidated damages;

       iii.  One (1) check payable to "Xavier Roman Pacheco" in the gross amount of $183.34, less all applicable tax withholdings and deductions, representing payment for Plaintiff Pacheco's alleged unpaid wages;

       iv.  One (1) check payable to "Xavier Roman Pacheco" in the total amount of $183.33, representing payment for Plaintiff Pacheco's claims for liquidated damages;

v.  One (1) check payable to "Daniel Morales Perez" in the gross amount of $600, less all applicable tax withholdings and deductions, representing payment for Plaintiff Perez's alleged unpaid wages;

vi.  One (1) check payable to "Daniel Morales Perez" in the total amount of $600, representing payment for Plaintiff Perez's claims for liquidated damages;

vii.  One (1) check payable to "Juan Carlos Flores-Mendez" in the gross amount of $466.67, less all applicable tax withholdings and deductions, representing payment for Plaintiff Mendez's alleged unpaid wages;

viii.  One (1) check payable to "Juan Carlos Flores-Mendez" in the total amount of $466.66, representing payment for Plaintiff Mendez's claims for liquidated damages;

ix.  One (1) check payable to "Jacquelin Cabrera" in the gross amount of $150, less all applicable tax withholdings and deductions, representing payment for Plaintiff Cabrera's alleged unpaid wages;

x.  One (1) check payable to "Jacquelin Cabrera" in the total amount of $150, representing payment for Plaintiff Cabrera's claims for liquidated damages;

xi.  One (1) check payable to "Michael Faillace & Associates, P.C." in the total amount of $1,666.67, representing payment for Plaintiffs' attorneys' fees and costs;

(f)  Within thirty (30) days after payment of the third installment of the Settlement Amount, Defendants shall make the fourth installment of the

Settlement Amount, broken down in 11 separate checks as described below, either to Defendants' counsel's firm escrow account, or to Plaintiffs, depending on whether the Court has "So Ordered" the Stipulation, by issuing:

i.   One (1) check payable to "Valentin Reyes" in the gross amount of $266.67, less all applicable tax withholdings and deductions, representing payment for Plaintiff Reyes' alleged unpaid wages;

ii.  One (1) check payable to "Valentin Reyes" in the total amount of $266.66, representing payment for Plaintiff Reyes' claims for liquidated damages;

iii. One (1) check payable to "Xavier Roman Pacheco" in the gross amount of $183.34, less all applicable tax withholdings and deductions, representing payment for Plaintiff Pacheco's alleged unpaid wages;

iv.  One (1) check payable to "Xavier Roman Pacheco" in the total amount of $183.33, representing payment for Plaintiff Pacheco's claims for liquidated damages;

v.   One (1) check payable to "Daniel Morales Perez" in the gross amount of $600, less all applicable tax withholdings and deductions, representing payment for Plaintiff Perez's alleged unpaid wages;

vi.  One (1) check payable to "Daniel Morales Perez" in the total amount of $600, representing payment for Plaintiff Perez's claims for liquidated damages;

vii. One (1) check payable to "Juan Carlos Flores-Mendez" in the gross amount of $466.67, less all applicable tax withholdings and deductions, representing payment for Plaintiff Mendez's alleged unpaid wages;

viii. One (1) check payable to "Juan Carlos Flores-Mendez" in the total amount of $466.66, representing payment for Plaintiff Mendez's claims for liquidated damages;

ix. One (1) check payable to "Jacquelin Cabrera" in the gross amount of $150, less all applicable tax withholdings and deductions, representing payment for Plaintiff Cabrera's alleged unpaid wages;

x. One (1) check payable to "Jacquelin Cabrera" in the total amount of $150, representing payment for Plaintiff Cabrera's claims for liquidated damages;

xi. One (1) check payable to "Michael Faillace & Associates, P.C." in the total amount of $1,666.67, representing payment for Plaintiffs' attorneys' fees and costs;

(g)    Within thirty (30) days after payment of the fourth installment of the Settlement Amount, Defendants shall make the fifth installment of the Settlement Amount, broken down in 11 separate checks as described below, either to Defendants' counsel's firm escrow account, or to Plaintiffs, depending on whether the Court has "So Ordered" the Stipulation, by issuing:

11

i. One (1) check payable to "Valentin Reyes" in the gross amount of $266.67, less all applicable tax withholdings and deductions, representing payment for Plaintiff Reyes' alleged unpaid wages;

ii. One (1) check payable to "Valentin Reyes" in the total amount of $266.66, representing payment for Plaintiff Reyes' claims for liquidated damages;

iii. One (1) check payable to "Xavier Roman Pacheco" in the gross amount of $183.34, less all applicable tax withholdings and deductions, representing payment for Plaintiff Pacheco's alleged unpaid wages;

iv. One (1) check payable to "Xavier Roman Pacheco" in the total amount of $183.33, representing payment for Plaintiff Pacheco's claims for liquidated damages;

v. One (1) check payable to "Daniel Morales Perez" in the gross amount of $600, less all applicable tax withholdings and deductions, representing payment for Plaintiff Perez's alleged unpaid wages;

vi. One (1) check payable to "Daniel Morales Perez" in the total amount of $600, representing payment for Plaintiff Perez's claims for liquidated damages;

vii. One (1) check payable to "Juan Carlos Flores-Mendez" in the gross amount of $466.67, less all applicable tax withholdings and deductions, representing payment for Plaintiff Mendez's alleged unpaid wages;

viii. One (1) check payable to "Juan Carlos Flores-Mendez" in the total amount of $466.66, representing payment for Plaintiff Mendez's claims for liquidated damages;

ix. One (1) check payable to "Jacquelin Cabrera" in the gross amount of $150, less all applicable tax withholdings and deductions, representing payment for Plaintiff Cabrera's alleged unpaid wages;

x. One (1) check payable to "Jacquelin Cabrera" in the total amount of $150, representing payment for Plaintiff Cabrera's claims for liquidated damages;

xi. One (1) check payable to "Michael Faillace & Associates, P.C." in the total amount of $1,666.67, representing payment for Plaintiffs' attorneys' fees and costs;

(h)    Within thirty (30) days after payment of the fifth installment of the Settlement Amount, Defendants shall make the sixth installment of the Settlement Amount, broken down in 11 separate checks as described below, either to Defendants' counsel's firm escrow account, or to Plaintiffs, depending on whether the Court has "So Ordered" the Stipulation, by issuing:

i. One (1) check payable to "Valentin Reyes" in the gross amount of $266.67, less all applicable tax withholdings and deductions, representing payment for Plaintiff Reyes' alleged unpaid wages;

13

ii.  One (1) check payable to "Valentin Reyes" in the total amount of $266.66, representing payment for Plaintiff Reyes' claims for liquidated damages;

iii. One (1) check payable to "Xavier Roman Pacheco" in the gross amount of $183.34, less all applicable tax withholdings and deductions, representing payment for Plaintiff Pacheco's alleged unpaid wages;

iv.  One (1) check payable to "Xavier Roman Pacheco" in the total amount of $183.33, representing payment for Plaintiff Pacheco's claims for liquidated damages;

v.   One (1) check payable to "Daniel Morales Perez" in the gross amount of $600, less all applicable tax withholdings and deductions, representing payment for Plaintiff Perez's alleged unpaid wages;

vi.  One (1) check payable to "Daniel Morales Perez" in the total amount of $600, representing payment for Plaintiff Perez's claims for liquidated damages;

vii. One (1) check payable to "Juan Carlos Flores-Mendez" in the gross amount of $466.67, less all applicable tax withholdings and deductions, representing payment for Plaintiff Mendez's alleged unpaid wages;

viii. One (1) check payable to "Juan Carlos Flores-Mendez" in the total amount of $466.66, representing payment for Plaintiff Mendez's claims for liquidated damages;

14

ix. One (1) check payable to "Jacquelin Cabrera" in the gross amount of $150, less all applicable tax withholdings and deductions, representing payment for Plaintiff Cabrera's alleged unpaid wages;

x. One (1) check payable to "Jacquelin Cabrera" in the total amount of $150, representing payment for Plaintiff Cabrera's claims for liquidated damages;

xi. One (1) check payable to "Michael Faillace & Associates, P.C." in the total amount of $1,666.67, representing payment for Plaintiffs' attorneys' fees and costs;

(i) Within thirty (30) days after payment of the sixth installment of the Settlement Amount, Defendants shall make the seventh installment of the Settlement Amount, broken down in 11 separate checks as described below, either to Defendants' counsel's firm escrow account, or to Plaintiffs, depending on whether the Court has "So Ordered" the Stipulation, by issuing:

i. One (1) check payable to "Valentin Reyes" in the gross amount of $266.67, less all applicable tax withholdings and deductions, representing payment for Plaintiff Reyes' alleged unpaid wages;

ii. One (1) check payable to "Valentin Reyes" in the total amount of $266.66, representing payment for Plaintiff Reyes' claims for liquidated damages;

15

iii. One (1) check payable to "Xavier Roman Pacheco" in the gross amount of $183.34, less all applicable tax withholdings and deductions, representing payment for Plaintiff Pacheco's alleged unpaid wages;

iv. One (1) check payable to "Xavier Roman Pacheco" in the total amount of $183.33, representing payment for Plaintiff Pacheco's claims for liquidated damages;

v. One (1) check payable to "Daniel Morales Perez" in the gross amount of $600, less all applicable tax withholdings and deductions, representing payment for Plaintiff Perez's alleged unpaid wages;

vi. One (1) check payable to "Daniel Morales Perez" in the total amount of $600, representing payment for Plaintiff Perez's claims for liquidated damages;

vii. One (1) check payable to "Juan Carlos Flores-Mendez" in the gross amount of $466.67, less all applicable tax withholdings and deductions, representing payment for Plaintiff Mendez's alleged unpaid wages;

viii. One (1) check payable to "Juan Carlos Flores-Mendez" in the total amount of $466.66, representing payment for Plaintiff Mendez's claims for liquidated damages;

ix. One (1) check payable to "Jacquelin Cabrera" in the gross amount of $150, less all applicable tax withholdings and deductions, representing payment for Plaintiff Cabrera's alleged unpaid wages;

    x.  One (1) check payable to "Jacquelin Cabrera" in the total amount of $150, representing payment for Plaintiff Cabrera's claims for liquidated damages;

    xi.  One (1) check payable to "Michael Faillace & Associates, P.C." in the total amount of $1,666.67, representing payment for Plaintiffs' attorneys' fees and costs;

(j)    Within thirty (30) days after payment of the seventh installment of the Settlement Amount, Defendants shall make the eighth installment of the Settlement Amount, broken down in 11 separate checks as described below, either to Defendants' counsel's firm escrow account, or to Plaintiffs, depending on whether the Court has "So Ordered" the Stipulation, by issuing:

    i.  One (1) check payable to "Valentin Reyes" in the gross amount of $266.67, less all applicable tax withholdings and deductions, representing payment for Plaintiff Reyes' alleged unpaid wages;

    ii.  One (1) check payable to "Valentin Reyes" in the total amount of $266.66, representing payment for Plaintiff Reyes' claims for liquidated damages;

    iii.  One (1) check payable to "Xavier Roman Pacheco" in the gross amount of $183.34, less all applicable tax withholdings and deductions, representing payment for Plaintiff Pacheco's alleged unpaid wages;

iv.  One (1) check payable to "Xavier Roman Pacheco" in the total amount of $183.33, representing payment for Plaintiff Pacheco's claims for liquidated damages;

v.  One (1) check payable to "Daniel Morales Perez" in the gross amount of $600, less all applicable tax withholdings and deductions, representing payment for Plaintiff Perez's alleged unpaid wages;

vi.  One (1) check payable to "Daniel Morales Perez" in the total amount of $600, representing payment for Plaintiff Perez's claims for liquidated damages;

vii.  One (1) check payable to "Juan Carlos Flores-Mendez" in the gross amount of $466.67, less all applicable tax withholdings and deductions, representing payment for Plaintiff Mendez's alleged unpaid wages;

viii.  One (1) check payable to "Juan Carlos Flores-Mendez" in the total amount of $466.66, representing payment for Plaintiff Mendez's claims for liquidated damages;

ix.  One (1) check payable to "Jacquelin Cabrera" in the gross amount of $150, less all applicable tax withholdings and deductions, representing payment for Plaintiff Cabrera's alleged unpaid wages;

x.  One (1) check payable to "Jacquelin Cabrera" in the total amount of $150, representing payment for Plaintiff Cabrera's claims for liquidated damages;

          xi.   One (1) check payable to "Michael Faillace & Associates, P.C." in the total amount of $1,666.67, representing payment for Plaintiffs' attorneys' fees and costs;

(k)      Within thirty (30) days after payment of the eighth installment of the Settlement Amount, Defendants shall make the ninth installment of the Settlement Amount, broken down in 11 separate checks as described below, either to Defendants' counsel's firm escrow account, or to Plaintiffs, depending on whether the Court has "So Ordered" the Stipulation, by issuing:

          i.   One (1) check payable to "Valentin Reyes" in the gross amount of $266.67, less all applicable tax withholdings and deductions, representing payment for Plaintiff Reyes' alleged unpaid wages;

          ii.   One (1) check payable to "Valentin Reyes" in the total amount of $266.66, representing payment for Plaintiff Reyes' claims for liquidated damages;

          iii.   One (1) check payable to "Xavier Roman Pacheco" in the gross amount of $183.34, less all applicable tax withholdings and deductions, representing payment for Plaintiff Pacheco's alleged unpaid wages;

          iv.   One (1) check payable to "Xavier Roman Pacheco" in the total amount of $183.33, representing payment for Plaintiff Pacheco's claims for liquidated damages;

    v.  One (1) check payable to "Daniel Morales Perez" in the gross amount of $600, less all applicable tax withholdings and deductions, representing payment for Plaintiff Perez's alleged unpaid wages;

    vi.  One (1) check payable to "Daniel Morales Perez" in the total amount of $600, representing payment for Plaintiff Perez's claims for liquidated damages;

    vii.  One (1) check payable to "Juan Carlos Flores-Mendez" in the gross amount of $466.67, less all applicable tax withholdings and deductions, representing payment for Plaintiff Mendez's alleged unpaid wages;

    viii.  One (1) check payable to "Juan Carlos Flores-Mendez" in the total amount of $466.66, representing payment for Plaintiff Mendez's claims for liquidated damages;

    ix.  One (1) check payable to "Jacquelin Cabrera" in the gross amount of $150, less all applicable tax withholdings and deductions, representing payment for Plaintiff Cabrera's alleged unpaid wages;

    x.  One (1) check payable to "Jacquelin Cabrera" in the total amount of $150, representing payment for Plaintiff Cabrera's claims for liquidated damages;

    xi.  One (1) check payable to "Michael Faillace & Associates, P.C." in the total amount of $1,666.67, representing payment for Plaintiffs' attorneys' fees and costs;

(l)    Within thirty (30) days after payment of the ninth installment of the Settlement Amount, Defendants shall make the tenth installment of the

Settlement Amount, broken down in 11 separate checks as described below, either to Defendants' counsel's firm escrow account, or to Plaintiffs, depending on whether the Court has "So Ordered" the Stipulation, by issuing:

i.  One (1) check payable to "Valentin Reyes" in the gross amount of $266.67, less all applicable tax withholdings and deductions, representing payment for Plaintiff Reyes' alleged unpaid wages;

ii.  One (1) check payable to "Valentin Reyes" in the total amount of $266.66, representing payment for Plaintiff Reyes' claims for liquidated damages;

iii.  One (1) check payable to "Xavier Roman Pacheco" in the gross amount of $183.34, less all applicable tax withholdings and deductions, representing payment for Plaintiff Pacheco's alleged unpaid wages;

iv.  One (1) check payable to "Xavier Roman Pacheco" in the total amount of $183.33, representing payment for Plaintiff Pacheco's claims for liquidated damages;

v.  One (1) check payable to "Daniel Morales Perez" in the gross amount of $600, less all applicable tax withholdings and deductions, representing payment for Plaintiff Perez's alleged unpaid wages;

vi.  One (1) check payable to "Daniel Morales Perez" in the total amount of $600, representing payment for Plaintiff Perez's claims for liquidated damages;

21

vii. One (1) check payable to "Juan Carlos Flores-Mendez" in the gross amount of $466.67, less all applicable tax withholdings and deductions, representing payment for Plaintiff Mendez's alleged unpaid wages;

viii. One (1) check payable to "Juan Carlos Flores-Mendez" in the total amount of $466.66, representing payment for Plaintiff Mendez's claims for liquidated damages;

ix. One (1) check payable to "Jacquelin Cabrera" in the gross amount of $150, less all applicable tax withholdings and deductions, representing payment for Plaintiff Cabrera's alleged unpaid wages;

x. One (1) check payable to "Jacquelin Cabrera" in the total amount of $150, representing payment for Plaintiff Cabrera's claims for liquidated damages;

xi. One (1) check payable to "Michael Faillace & Associates, P.C." in the total amount of $1,666.67, representing payment for Plaintiffs' attorneys' fees and costs;

(m)    Within thirty (30) days after payment of the tenth installment of the Settlement Amount, Defendants shall make the eleventh and final installment of the Settlement Amount, broken down in 11 separate checks as described below, either to Defendants' counsel's firm escrow account, or to Plaintiffs, depending on whether the Court has "So Ordered" the Stipulation, by issuing:

i.   One (1) check payable to "Valentin Reyes" in the gross amount of $266.67, less all applicable tax withholdings and deductions, representing payment for Plaintiff Reyes' alleged unpaid wages;

ii.  One (1) check payable to "Valentin Reyes" in the total amount of $266.66, representing payment for Plaintiff Reyes' claims for liquidated damages;

iii. One (1) check payable to "Xavier Roman Pacheco" in the gross amount of $183.34, less all applicable tax withholdings and deductions, representing payment for Plaintiff Pacheco's alleged unpaid wages;

iv.  One (1) check payable to "Xavier Roman Pacheco" in the total amount of $183.33, representing payment for Plaintiff Pacheco's claims for liquidated damages;

v.   One (1) check payable to "Daniel Morales Perez" in the gross amount of $600, less all applicable tax withholdings and deductions, representing payment for Plaintiff Perez's alleged unpaid wages;

vi.  One (1) check payable to "Daniel Morales Perez" in the total amount of $600, representing payment for Plaintiff Perez's claims for liquidated damages;

vii. One (1) check payable to "Juan Carlos Flores-Mendez" in the gross amount of $466.67, less all applicable tax withholdings and deductions, representing payment for Plaintiff Mendez's alleged unpaid wages;

viii. One (1) check payable to "Juan Carlos Flores-Mendez" in the total amount of $466.66, representing payment for Plaintiff Mendez's claims for liquidated damages;

ix. One (1) check payable to "Jacquelin Cabrera" in the gross amount of $150, less all applicable tax withholdings and deductions, representing payment for Plaintiff Cabrera's alleged unpaid wages;

x. One (1) check payable to "Jacquelin Cabrera" in the total amount of $150, representing payment for Plaintiff Cabrera's claims for liquidated damages;

xi. One (1) check payable to "Michael Faillace & Associates, P.C." in the total amount of $1,666.67, representing payment for Plaintiffs' attorneys' fees and costs;

(n)    While the approval of this Agreement is pending, Defendants counsel shall notify and confirm to Plaintiffs' counsel that the settlement installment payments are being submitted to Defendants' counsel's escrow account in accordance with the schedule outlined above.

3.    At the appropriate time(s), Defendants shall issue an IRS tax Form W-2 to each of the Plaintiffs for the portions of the Settlement Amount which constitute wages ("the wage settlement payments"), and an IRS tax Form 1099 for Plaintiffs and Michael Faillace & Associates, P.C. for the remaining portions of the Settlement Amount ("the non-wage settlement payments"). Plaintiffs agree to hold Defendants harmless, and indemnify Defendants from any payments Defendants may be required to make to any taxing authority, as a result of the payment of the non-wage settlement payments.

24

4.      Concurrently with the execution of this Agreement, Defendants shall execute an Affidavit of Confession of Judgment in the form attached hereto as Exhibit B.  Defendants shall provide Plaintiffs' counsel with said executed Affidavit of Confession of Judgment bearing original signatures.   The Affidavit of Confession of Judgment will be held in escrow by Plaintiffs' counsel.   In the event Defendants are in default of any of the payments required under Paragraph 2 of this Agreement, Plaintiffs' counsel shall provide fourteen (14) calendar days' written notice to Defendants' counsel of his intent to file the Affidavit of Confession of Judgment to be entered against Defendants for the unpaid portion of the Settlement Amount immediately due and payable. Defendants will have fourteen (14) calendar days to remedy their default before Plaintiffs file the Affidavit of Confession of Judgment.   Upon complete satisfaction of all payments set forth in Paragraph 2, Plaintiffs' counsel will return the Affidavit of Confession of Judgment to Defendants' counsel or verify that same has been destroyed.

5.      Plaintiffs promise and represent that they will withdraw, with prejudice, any and all outstanding lawsuits, demands, actions, complaints, and/or claims of alleged violations concerning Plaintiffs' alleged employment with Defendants, filed with any federal, state and/or local agencies/administrative body or any judicial forum against Defendants and Releasees, both individually and in their/its official capacities.  After the Parties' execution of this Agreement, Plaintiff will not file any administrative or judicial complaints, charges, lawsuits, claims, demands or actions of any kind against Defendants or any of the Releasees that took place at any time, from the beginning of time until the date of this Agreement.   In the event any such complaints, charges, lawsuits, claims, demands or actions are not withdrawn due to circumstances beyond the control of Plaintiffs, Plaintiffs promise and represent that they will not voluntarily testify, give evidence or otherwise participate or cooperate in any investigation or

other proceeding connected with or resulting from any such complaints, lawsuits, claims, demands or actions, and that Plaintiffs will execute such papers or documents as Defendants reasonably determine may be necessary to have said complaint, lawsuit, claim, demand or action dismissed with prejudice.

6.    Plaintiffs acknowledge that they have received sufficient consideration as set forth in this Agreement.  Plaintiffs expressly acknowledge that the release provisions herein shall be given full force and effect in accordance with each and all of the terms and provisions expressed herein, including but not limited to those terms and provisions relating to unknown or unsuspected rights, claims, demands and causes of action, if any, to the same effect as those terms and provisions relating to any other claims, demands or causes of action herein specified.

7.    Plaintiffs acknowledge that other than the payments in settlement to be paid as described in Paragraph 2 of this Agreement, there are no other forms of compensation owed from Defendants to Plaintiffs or Plaintiffs' counsel whatsoever.

8.    The Parties agree that, in an action arising from any alleged breach by any of the Parties to this Agreement, in addition to any remedies available to the Parties in law or equity for a breach thereof, the prevailing party, shall be entitled to receive reasonable attorney's fees and costs.

9.    In the event any action is commenced whereby Defendants are pursued for payment in connection with the position of any of the Plaintiffs as a Medicare or Medicaid beneficiary, Plaintiffs each agree to indemnify Defendants and hold Defendants harmless in full.

10.    The Parties acknowledge that this Agreement does not constitute an admission by Defendants of any wrongful action or violation of any federal or state statute, or common law rights, including those relating to the provisions of any law or statute concerning employment

actions, or any other possible or claimed violation of law or rights, or an admission by Defendants that Plaintiffs' claims have merit.

11.    This Agreement shall not be interpreted in favor of or against any party on account of such party's counsel having drafted this Agreement.

12.    Plaintiffs each acknowledge that they have not divested, hypothecated, or otherwise bargained away any interest they possessed in their purported claims. Plaintiffs each acknowledge and represent that they know of no other person or entity that holds a remunerative interest in any plausible legal claims they could assert, and Plaintiffs each acknowledge and represent that there are no known other persons or entities with standing to bring any plausible legal claims that could have been asserted by Plaintiffs. This Agreement shall not be construed to create rights in, grant remedies to, or delegate any duty, obligation or undertaking established herein to, any third party as a beneficiary of this Agreement unless expressly stated in this Agreement.

13.    The Parties agree that they shall execute any other instruments and/or documents that are reasonable or necessary to implement this Agreement.

14.    This Agreement contains all the terms and conditions agreed upon by the Parties hereto, and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this Agreement regarding the subject matter of the instant Action shall be deemed to exist, or to bind the parties hereto, or to vary the terms and conditions contained herein.

15.    The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect.

16.    This Agreement may only be modified, altered or changed in writing, signed by the Parties.

17.    This Agreement shall be subject to and governed by the laws of the State of New York without giving effect to principles of conflicts of law.  The Parties agree any Court of competent jurisdiction within the State of New York will have jurisdiction over this Agreement.

18.    This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute one and the same instrument.  In addition, any scanned copies or facsimiled copies of the Agreement executed in any number of counterparts shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute one and the same instrument.  All other notices and documents set forth herein shall be delivered to: counsel for Defendants, Keith Gutstein, Esq., Kaufman Dolowich & Voluck, LLP, 135 Crossways Park Drive, Suite 201, Woodbury, New York 11797, (516) 681-1100, facsimile (516) 681-1101, kgutstein@kdvlaw.com; and counsel for Plaintiffs, Jesse Barton, Esq., Michael Faillace & Associates, P.C., 60 East 42nd Street, Suite 4510, New York, NY 10165, (212) 317-1200, jbarton@faillacelaw.com.

19.    Plaintiffs acknowledge that they have carefully reviewed this Agreement and that their entry into this Agreement is a free and willful act.  Plaintiffs over the age of forty (40) further represent that they have been provided the opportunity of at least 21 days to review this Agreement, and that to the extent they execute this Agreement before that 21 day period expires, they freely and voluntarily elect to forgo waiting 21 days prior to their execution of the Agreement.  After execution of the Agreement, Plaintiffs over the age of forty (40) shall have seven (7) days to revoke their acceptance of the Agreement (the "Revocation Period").  Plaintiffs

over the age of forty (40) further understand that they can revoke their acceptance by communicating their revocation in writing, so as to be received by counsel for Defendants on or before the seventh day after their execution of the Agreement in accordance with the notice provisions in Paragraph 18.




[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

**IN WITNESS WHEREOF,** Plaintiffs and Defendants have duly executed this Settlement and Release Agreement freely and voluntarily.

*Valentin Reyes Manjarrez*
VALENTIN REYES

STATE OF NEW YORK )
                                          )s.s.
COUNTY OF _____ )

On February 7th , 2018, before me personally came Valentin Reyes, to me known, and known to me to be the individual described in, and who executed the foregoing Settlement and Release Agreement, and duly acknowledged to me that he executed the same.

NOTARY PUBLIC CASSINELLI
Notary Public, State of New York
Registration #01CE6332862
Qualified In Nassau County
Commission Expires Nov. 9, 2019

XAVIER ROMAN PACHECO

STATE OF NEW YORK )
                                          )s.s.
COUNTY OF _____ )

On February 7th , 2018, before me personally came Xavier Roman Pacheco, to me known, and known to me to be the individual described in, and who executed the foregoing Settlement and Release Agreement, and duly acknowledged to me that he executed the same.

NOTARY PUBLIC
MARIA J CEDENO CASSINELLI
Notary Public, State of New York
Registration #01CE6332862
Qualified In Nassau County
Commission Expires Nov. 9, 2019

DANIEL MORALES PEREZ

STATE OF NEW YORK )
                                          )s.s.
COUNTY OF _____ )

On February 7th , 2018, before me personally came Daniel Morales Perez, to me known, and known to me to be the individual described in, and who executed the foregoing Settlement and Release Agreement, and duly acknowledged to me that he executed the same.

NOTARY PUBLIC
MARIA J CEDENO CASSINELLI
Notary Public, State of New York
Registration #01CE6332862
Qualified In Nassau County
Commission Expires Nov. 9, 2019

30

_JuanCarlos FM_
_____
JUAN CARLOS FLORES-MENDEZ

STATE OF NEW YORK            )
                             )s.s.
COUNTY OF _____    )

On _February 8TH_, 2018, before me personally came Juan Carlos Flores-Mendez, to me known, and known to me to be the individual described in, and who executed the foregoing Settlement and Release Agreement, and duly acknowledged to me that he executed the same.

NOTARY PUBLIC MASSINELLI
Notary Public, State of New York
Registration #01CE6332862
Qualified in Nassau County
Commission Expires Nov. 9, 2019

_____
JACQUELIN CABRERA

STATE OF NEW YORK            )
                             )s.s.
COUNTY OF _____    )

On _2-15_, 2018, before me personally came Jacquelin Cabrera, to me known, and known to me to be the individual described in, and who executed the foregoing Settlement and Release Agreement, and duly acknowledged to me that she executed the same.

_____
NOTARY PUBLIC

MICHAEL FAILLACE
NOTARY PUBLIC-STATE OF NEW YORK
No. 02FA6120964
Qualified in New York County
My Commission Expires January 03, 20__

31

ADMIRAL SERVICES NY LLC
By: _Willman Falcon_
Title: _President_

STATE OF _New York_ }
COUNTY OF _New York_ } S.S.

On _12th_ day _of Feb._, 2018, before me personally came _Willman Falcon_, and acknowledged himself or herself to be an officer of Admiral Services NY LLC, and that he or she, as such, being authorized so to do, executed the foregoing Settlement Agreement and Release for the purposes therein contained, by signing his or her name for Admiral Services NY LLC.

_____
NOTARY PUBLIC

WILLMAN FALCON

STATE OF _New York_ }
COUNTY OF _New York_ } S.S.

On _12 day of Feb._ 2018, before me personally came Willman Falcon, to me known, and known to me to be the individual described in, and who executed the foregoing Settlement Agreement and Release, and duly acknowledged to me that he executed the same.

_____
NOTARY PUBLIC

DORIS ADESOMON AYEKE
Notary Public - State of New York
NO. 01AY6336882
Qualified in New York County
My Commission Expires Feb 8, 2020

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

VALENTIN REYES, et al.

                                 Plaintiffs,

        v.

ADMIRAL SERVICES NY LLC, et al,

                                 Defendants.

-------------------------------------------------------------X

Case No. 17-CV-05918 (ALC)

**STIPULATION OF DISMISSAL**

        **IT IS HEREBY STIPULATED AND AGREED**, by and between the Parties in the above captioned action through their undersigned counsel that, whereas no party hereto is an infant or incompetent person for whom a committee has been appointed, and no person not a party has an interest in the subject matter of the action, in accordance with Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, the Amended Complaint in the above-captioned action and all claims alleged therein be dismissed with prejudice, with each party to bear their own fees and costs; and further than Plaintiffs are precluded from bringing any further claims under the Fair Labor Standards Act or New York Labor Law, or any federal, state or local law, for unpaid wages, including overtime pay for the period set forth in Plaintiff's Complaint. This Court shall retain jurisdiction to enforce the parties' Settlement Agreement.

        **IT IS FURTHER STIPULATED AND AGREED** that this Stipulation may be executed in counterparts with scanned PDF or facsimile signatures treated as originals.

[SIGNATURES ON NEXT PAGE]

34

Dated: _____, 2018

Michael Faillace & Associates, P.C.
*Attorneys for Plaintiffs*


By: _____
         Jesse Barton, Esq.
One Grand Central Place
60 East 42nd St, Suite 4510
New York, New York 10165
(212) 317-1200
jbarton@faillacelaw.com


Dated: _____, 2018

KAUFMAN DOLOWICH & VOLUCK, LLP
*Attorneys for Defendants*


By: _____
         Keith Gutstein, Esq.
         Matthew R. Capobianco, Esq.
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
(516) 681-1100
kgutstein@kdvlaw.com
mcapobianco@kdvlaw.com


**SO ORDERED:**


_____
Andrew L. Carter
U.S.D.J.

35

# EXHIBIT B

4827-4218-1212, v. 1

SUPREME COURT OF THE STATE OF NEW YORK
------------------------------------------------------------------X
VALENTIN REYES, XAVIER ROMAN PACHECO,
DANIEL MORALES PEREZ, JUAN CARLOS
FLORES-MENDEZ, and JACQUELIN CABRERA          Docket No.
ROMERO,

                                Plaintiffs,

                                           **AFFIDAVIT OF CONFESSION**
      -against-                                      **OF JUDGMENT**

ADMIRAL SERVICES NY LLC and WILLIAM
FALCON,

                                Defendants.
------------------------------------------------------------------X

### AFFIDAVIT FOR JUDGMENT BY CONFESSION

STATE OF  New York    )
                           )   ss.:
COUNTY OF  New York  )

      Willman Falcon, being duly sworn, deposes and says:

      1.     I am a Defendant in the above-entitled action and I am a principal of Defendant Admiral Services NY LLC (the "Corporate Defendant").

      2.     I reside in Bergen County.

      3.     I am duly authorized to make this affidavit pursuant to § 3218 of the New York Civil Practice Law and Rules, in support of Plaintiffs' application for the entry of a judgment by confession against me and the Corporate Defendant in the above-captioned action.

      4.     This is a judgment to be confessed for money due.  The facts out of which the debt arose and that the sum confessed as justly due is set forth below.

      5.     In or around November 2017, Defendants agreed to pay the total sum of Sixty Five Thousand Dollars and Zero Cents ($65,000.00) (the "Settlement Amount") in exchange for the dismissal of the above-captioned action, with prejudice, and the Parties executed a Settlement and Release Agreement (the "Agreement").

      6.     Under the terms of the Agreement, Defendants agreed to pay a total gross settlement amount of Sixty Five Thousand Dollars and Zero Cents ($65,000.00) via an initial payment of Fifteen Thousand Dollars and Zero Cents ($15,000.00) followed by ten (10) equal

monthly installments of Five Thousand Dollars and Zero Cents ($5,000.00) until the total Settlement Amount was paid.  All payments are made pursuant to the language in the Agreement.

7.    Under the terms of the Agreement, I agreed to execute the instant Affidavit for Confession of Judgment on behalf of myself and the Corporate Defendant in the amount of Sixty Five Thousand Dollars and Zero Cents ($65,000.00), less any payments made by Defendants under said Agreement.

8.    Under the terms of the Agreement, if Defendants are in default in the payment of any of the said installments, Plaintiff shall provide fourteen (14) calendar days' notice to Defendants of his intent to file the Affidavit for Confession of Judgment with the clerk of this Court. Defendants shall have fourteen (14) calendar days to remedy their default.  If Defendants remain in default in the payment of any of the said installments after the fourteen (14) day period to cure same has expired, Defendants agree to entry of judgment in the amount of the unpaid portion of the Settlement Amount.

9.    I hereby represent my understanding that upon Defendants' breach of the Settlement Agreement and failure to cure, this Confession of Judgment shall be docketed and entered in the Supreme Court of the State of New York, as a judgment for $65,000 (less any amounts already paid to Plaintiff pursuant to the above schedule), against me, Willman Falcon, and Admiral Service NY LLC, jointly and severally.

10.    Upon all payments being made under the Agreement, this Confession of Judgment shall be invalidated and any monies due and owing under it shall be voided.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Dated:    Woodbury, New York
          Feb. 12th , 2018

                                        _____
                                        WILLMAN FALCON

STATE OF New York    }
                     } S.S.
COUNTY OF New York   }

    On 12th day of Feb, 2018, before me personally came Willman Falcon, to me known, and known to me to be the individual described in, and who executed the foregoing Affidavit for Judgment by Confession, and duly acknowledged to me that he executed the same.

_____
NOTARY PUBLIC

                                        _____
                                        ADMIRAL SERVICES NY LLC
                                        By: Willman Falcon
                                        Title: President

STATE OF New York    }
                     } S.S.
COUNTY OF New York   }

    On 12th day of Feb, 2018, before me personally came Willman Falcon, and acknowledged himself to be an officer of Admiral Services NY LLC and that he, as such, being authorized so to do, executed the foregoing Affidavit for Judgment by Confession for the purposes therein contained, by signing his name for Admiral Services NY LLC.

_____
NOTARY PUBLIC

4827-4218-1212, v. 1

DORIS ADESOMON AYEKE
Notary Public - State of New York
NO. 01AY6336862
Qualified in New York County
My Commission Expires Feb 8, 2020

39